**ORIGINAL**

TERRY LOUIS CARTER
P.O. Box 70047
Overport, Durban 4067
KZN Province, ZAF
Phone Number: 011-27-63-316-3964
Fax Number:    1-888-355-9313
Email: cruiser184@hotmail.com
Plaintiff
*In Propria Persona*

```
 _____
|  ✓ FILED      __ LODGED  |
|  __ RECEIVED  __ COPY    |
|                           |
|        JUL 1 5 2019       |
|                           |
|   CLERK U S DISTRICT COURT|
|    DISTRICT OF ARIZONA    |
|  BY_____DEPUTY |
```

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

**TERRY LOUIS CARTER,**

          Plaintiff,

vs.

**KNIGHT TRANSPORTATION, INC;
KNIGHT REFRIGERATED, LLC (a
subsidiary of KNIGHT
TRANSPORTATION, INC.); SWIFT
TRANSPORTATION CO. OF
ARIZONA, LLC; RICHARD
STOCKING; SHANNON MARTINSON;
AND STEVE HELENSKI,**

          Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CASE NO.:**   CV-19-4719-PHX-JJT

**COMLAINT FOR DAMAGES;
DECLARATORY AND
INJUNCTIVE RELIEF**

[18 U.S.C. § 1961(1), § 1962, § 1964(a)
and (c); and 28 U.S.C. § 1331]

**DEMAND FOR JURY TRIAL**

Plaintiff Terry Louis Carter ("Plaintiff"), complains and alleges the following:

## JURISDICTION & VENUE

1.   This Court has jurisdiction over this action to enjoin the Defendants (and each of them), and for the recovery of money damages pursuant to **Title 18** of the **United States Code (U.S.C.), Section (§) 1964(a)** and **(c); and 28 U.S.C. § 1331** and **§ 1332(a), (c)**.

2.   *Venue* is proper in the Phoenix Division of the Federal District Court for Arizona pursuant to **28 U.S.C. § 82**, based upon both Defendant KNIGHT and Defendant SWIFT's established principal corporate residence; and their *administrative operations headquarters* being centrally located within said District Court's Phoenix Division.

## **INTRODUCTION**

3.   This is a lawful private right of action substantively permitted under the provisions of **§ 1964(c)** of **Title 18** of the **U.S.C.**; and **§ § 1332(a), (c)** of **Title 28**, of the **U.S.C.** to enjoin (as prescribed by **18 U.S.C. § 1964(a)**) future and to seek compensation for damages for current and past unlawful conduct hereinafter alleged against Defendants *Knight Transportation, Inc.*; *Knight Refrigerated, LLC* (hereinafter Defendant KNIGHT REFIGERATED); *Swift Transportation Co. of Arizona, LLC* (hereinafter "Defendant SWIFT" or "SWIFT"), *Richard Stocking*, Terminal/Driver Manager Supervisor (hereinafter "Defendant STOCKING"), *Shannon Martinson*, Regional Human Resources Leader (hereinafter "Defendant *MARTINSON*"), and *Steve Helenski*, Driver Manager (DM) (hereinafter "Defendant HELENSKI"), *inter alia*, associated in fact (as prescribed by **18 U.S.C. § 1964(c)**), for (**a**) allegedly engaging in a pattern of *racketeering* activities against Plaintiff, by and/or through the usage of mail and/or wire services in the pursuit and/or support of their interstate commerce operations for the ultimate purpose of *the establishment of the enterprise* known as *Knight-Swift Transportation Holdings, Inc.* (hereinafter "*Knight-Swift*"); and (**b**) in further pursuit thereof, allegedly conspiring to violate Washington State law.

4.   As more particularly alleged in COUNT 1 through COUNT 3 of the within **Cause of Action** (*beginning at p.* 6, *infra*), it is alleged that Defendant KNIGHT REFIGERATED and Defendant SWIFT have conspired to violate *the substantive provisions of the* Racketeer Influenced and Corrupt Organizations Act (RICO) (codified under **18 U.S.C. § 1962**), *through the commission of two or more acts in a pattern of racketeering activity* (as defined in **18 U.S.C. § 1961(1)(B)** and **(5)**) by or under the direction of their executive, administrative or other professional managers and supervisory personnel, associated in fact (inclusive of said Defendants' co-defendants herein [and otherwise in compliance with or the support of said Defendant KNIGHT REFIGERATED and Defendant SWIFT's shippers, receivers and/or other goods consignees' alleged

unlawful activities, in furtherance of the transportation of goods in interstate and/or foreign commerce]), who *maintains an interest in*, and/or participates in *said enterprise* (as defined by **18 U.S.C. § 1961(4)**), in which it is further alleged that Defendant KNIGHT REFIGERATED and Defendant SWIFT have fashioned or formed and/or permitted the union of to exist that poses a threat of continued criminal activity *affecting interstate and/or foreign commerce*; and it is further alleged that in pursuit of which said Defendants routinely violate Washington State laws.

5.   Accordingly, and consistent with the demand for jury trial (*infra*), Plaintiff seeks from the Court (**a**) a declaration of the rights of the parties; (**b**) to enjoin and restrain the Defendants from future violations of (*i*) the *RICO statutes* (**18 U.S.C. § 1961** *et seq.*), and (*ii*) Washington State Laws; and (**c**) joint and several liability for an award for actual, compensatory, exemplary/punitive, and statutory damages, from the Defendants (and each of them) for alleged conspiratorial and other evidential past and ongoing unlawful activity.

## THE PARTIES

6.   Plaintiff, **TERRY LOUIS CARTER**, was a State of Washington (Washington) resident employed as a Washington State worker under Washington States' commercial driver license issuing and operating authority as an Over-The-Road (OTR) truck driver from on or about July 12, 2009 to on or about September 23, 2009, for Defendant KNIGHT REFIGERATED, based out of KNIGHT REFIGERATED's Idaho Falls, Idaho terminal; and from November 26, 2012 through May 23, 2013, an OTR truck driver truck driver for Defendant SWIFT, based out of SWIFT's Dry Van Division in Sumner, Washington.

7.   Plaintiff is informed and believes and thereupon alleges that at all relevant times, between the dates set forth in paragraph 6 (*supra*), Plaintiff spent virtually every day of the month in the truck assigned to him by (**a**) Defendant KNIGHT REFIGERATED, either on dispatched OTR pickup or delivery assignments, or on hold or layover status; and (**b**) driving routes to and/or from Washington, and/or through

Washington to other States for Defendant SWIFT (apart from a period of 2 weeks between January 30, 2013 and February 12, 2013, while on an approved unpaid personal family leave). Much of Plaintiff's work involved transporting goods in interstate commerce operations for the Defendants.

8. Plaintiff is informed and believes and thereupon alleges that Defendant **KNIGHT REFIGERATED** (whose principally engaged in the business of trucking and the transporting of refrigerated goods) is a *multi-Million-dollar* subsidiary of Defendant KNIGHT TRANSPORTATION, INC. (collectively herein, "Defendant **KNIGHT**"), and is incorporated in Arizona and overseen by the same core group of executives employed by Defendant **KNIGHT TRANSPORTATION, INC.**; both of whose principal administrative headquarters is located at 20002 N. 19th Avenue, Phoenix, AZ 85027-4250.

9. Separate and distinct from the averments of paragraph 7, *supra*, Plaintiff is informed and believes and thereupon further alleges that Defendant KNIGHT REFIGERATED is also an enterprise (as defined by **18 U.S.C. § 1961(4)**), which has recruited thousands of people nationwide to drive combination refrigerated vehicles more popularly known as reefers; including combination vehicle drivers such as Plaintiff more referred to as reefer drivers. Plaintiff alleges Defendant KNIGHT REFIGERATED provides these services to companies throughout the United States of America (USA).

10. Plaintiff is informed and believes and thereupon alleges that Defendant **SWIFT** is a *multi-Billion-dollar* Delaware limited liability company (and subsidiary of *Knight-Swift*), with its principal administrative headquarters located at 2200 S. 75th Avenue, Phoenix, Arizona 85043-7410. Plaintiff further alleges that Defendant SWIFT is principally engaged in the business of the transport of goods in interstate and foreign commerce. Plaintiff alleges Defendant SWIFT provides these services to companies throughout the USA, and Mexico.

11. Separate and distinct from the averments of paragraph 7, *supra*, Plaintiff is informed and believes and thereupon further alleges that Defendant SWIFT is also an

enterprise (as defined by **18 U.S.C. § 1961(4)**), which employs over 13,000 people nationwide; including OTR tractor trailer rig drivers, residing in and/or operating from Washington.

12. Plaintiff is informed and believes and thereupon alleges that Defendant **RICHARD STOCKING**, at all relevant times pertinent to the within causes of action encompassing Defendant SWIFT, managed, directed and controlled the operations of Defendant SWIFT's Washington Terminal (inclusive of Defendant SWIFT's regional Driver Managers), and sought to aid and did benefit the operations of Defendant SWIFT (in the course and scope of his employment) by perpetuating the alleged schemes and other *racketeering* activities engaged in or the activities of which affected interstate commerce, with the intent to defraud Plaintiff of his property, as more particularly set forth hereinafter in this Complaint.

13. Plaintiff is informed and believes and thereupon alleges that Defendant **SHANNON MARTINSON** managed, directed and/or controlled all relevant aspects of Defendant SWIFT's personnel complaints regarding work and/or personnel monetary compensation matters at all relevant times alleged by this action material and/or pertinent to and/or encompassed by the within cause of action in her role as Regional Human Resources Leader, pursuant to which, it is alleged, Defendant *Martinson* sought to aid and did benefit the operations of Defendant SWIFT (in the course and scope of her employment) by, *inter alia*, conspiring to perpetuate the alleged schemes and other pattern of *racketeering* activities of her co-defendants engaged in or the activities of which affected interstate commerce, with the aim to mislead Plaintiff regarding his right to the liquidation of his income property, and to otherwise dissuade and/or forestall Plaintiff from a timely exercise or investigation of his rights, and such available legal remedies afforded Plaintiff in pursuit thereof, as more particularly set forth hereinafter in this Complaint..

14. Plaintiff is informed and believes and thereupon alleges that Defendant **STEVE HELENSKI**, at all relevant times pertinent to the within cause of action encompassing Defendant SWIFT was a Driver Manager, employed at Defendant SWIFT's Washington Terminal.  Plaintiff further alleges that Defendant HELENSKI sought to aid and did benefit the operations of Defendant SWIFT (in the course and scope of his employment) by, *inter alia*, conspiring to perpetuate the alleged schemes and other *pattern of racketeering* activities engaged in or the activities of which affected interstate commerce, with the intent to defraud Plaintiff of his property, as more particularly set forth hereinafter in this Complaint.

## FACTUAL ALLEGATIONS

### CAUSE OF ACTION

COUNT 1

### 18 U.S.C. § 1341 and § 1343

(Wire Fraud ~ *Generally* and *Specifically*)

15. Plaintiff is informed and believes and thereupon alleges that Defendant KNIGHT and Defendant SWIFT under the direction of their respective executive, administrative or other professional managing and supervisory personnel associated in fact, conspired to form, formed or permitted through an alleged pattern of unlawful activity the routine operation of an unlawful scheme that would defraud Plaintiff of income and unjustly enrich the Defendants (and each of them), and that by multiple means of false or fraudulent pretenses, *engaged in a pattern of racketeering activit*y with the *specific purpose of fulfilling* the Defendant's *ambitions to increase their respective company's profit margin* through an alleged routine unlawful pecuniary withholding of Plaintiff's earned income property (by way of wire services engaged in or the activities of which affected interstate commerce): *that is*, it is alleged the Defendants (and each of them) failed or refused to provide accurate itemized weekly earnings statements, with the

goal of and willful intent to further said ambition with the consequent accumulation of such routine unlawful pecuniary withholdings of earned income property for use in prospective investments and/or purchases to acquire, maintain and/or merge the unlawfully increased value of its securities and such other holdings and/or those held by its competitors in the transportation industry, in violation of **Title 18 U.S.C. § 1962** to Plaintiff's detriment.

16. , Plaintiff is informed and believes and thereupon alleges that the Defendants in accordance with and furtherance of the pursuit of the unlawful pecuniary gains alleged in paragraph 15 (*supra*), the Defendants allegedly routinely issued false weekly earnings statements designed to obfuscate and undermine Plaintiff's substantive and regulatory income property entitlements (and/or with reckless disregard of same) that were sustainable by the prescribed responsibilities of the Defendants thereunder.   Plaintiff alleges that by the alleged means of routinely denying the lawful and legitimate right to such income property derived from the employment activities of Plaintiff while Plaintiff was engaged in and/or the activities of which affected interstate commerce for the purposes heretofore alleged to have been unlawfully withheld that the Defendants also violated the proscriptions of **Title 18 U.S.C. § 1962** to Plaintiff's detriment.

17.  Plaintiff is informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 and 16 (*supra*), the Defendants identified therein routinely violated the substantive provisions of Chapters 49.46 and 49.52 of Title 49 of the **Revised Code of the State of Washington (RCW)** (*e.g.*, **RCW 49.46.090(1)**, **RCW 49.46.130(1), (2)(f)** and **RCW 49.52.050**) and regulatory provisions of **Title 296** of the **Washington Administrative Code (WAC)** (*e.g.*, **WAC 296-126-021**, **WAC 296-126-040(1), (2)**, **WAC 296-128-012(2)** and **WAC 296-131-020(1), (2)**) affecting Washington's substantive and regulatory minimum wage implementing and/or procedural authorities, with the alleged intent to facilitate through such alleged routine violations the alleged *pattern of racketeering activity* therein described by perpetuating

the alleged unlawful conduct with the intent to disseminate and/or retain those ill-gotten monetary gains alleged (along with the prospective interest income acquired thereupon) for such future investments as heretofore alleged with impunity; and/or in avoidance of any requirement to accept an unabridged accounting thereof, through an alleged scheme to minimize the otherwise adverse impact thereof by further arranging for and/or routinely submitting to the occasional class action civil suit with the intent to and for the purpose of entering into *a settlement and release* of otherwise viable claims for a small fraction of the monetary value otherwise gained by such alleged pattern of racketeering activity aimed at furthering and satisfying the pretense of accountability, to the benefit of the Defendants and detriment of injured class members generally, and to Plaintiff's detriment in particular, in violation of **Title 18 U.S.C. § 1962**.

18. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 to 17 (*supra*), the Defendants identified therein willfully failed or refused to provide for the communication of and to otherwise properly communicate to Plaintiff the occurrences of all times Plaintiff was otherwise either (**a**) properly "*on duty not-driving*"; and/or (**b**) in "compensable hold periods" in *attendance on their commercial motor vehicle* outside the scope of the Federal Motor Carrier Safety Regulations (FMCSR), including such time (**i**) in an "off duty or sleeper berth period" *while awaiting a cognizable dispatch*, and/or (**ii**) during such other *safety related* down times mandated by the FMCSR, whether delineated as a "rest break", or an "off duty or sleeper berth period" during the course of a bona-fide dispatched assignment) for the purpose of establishing and/or recording the commencement and duration of prescribed wage entitlements under Washington State law (including overtime).

19. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 to 17 (*supra*), the Defendants identified therein acting through their executive, administrative or other

professional managers and supervisory personnel, by and/or through the usage of mail and/or wire services in interstate commerce as regards Defendant KNIGHT REFIGERATED on or about twelve (12), and as regards Defendant SWIFT (inclusive of SWIFT's co-defendants herein) on twenty seven (27) separate occasions, the Defendants willfully acted to issue false *"Earnings Statements"* to Plaintiff, whereupon it is further alleged that both Defendants did so, in violation of **18 U.S.C. § 1341** (relating to Mail Fraud), **18 U.S.C. § 1343** (relating to Wire Fraud) and **18 U.S.C. § 1962**.

20. Plaintiff is further informed and believes and thereupon alleges that at all applicable times, Defendant KNIGHT REFIGERATED and Defendant SWIFT (inclusive of SWIFT's co-defendants herein) acting through their executive, administrative or other professional managers and supervisory personnel, committed general acts of wage abuse against Plaintiff, and continues to commit such acts with their continuing failure or refusal to properly acknowledge and remedy such alleged abuses, including, but not limited to: failing to pay Plaintiff's minimum wages for non-driving related hours worked and wages for overtime worked, as directed by the Defendants, and/or hold hours incidental thereto requiring the *attendance of Plaintiff on their commercial motor vehicles* outside the scope of the Federal Motor Carrier Safety Regulations (FMCSR) (including such time either *away from home without being released from all driver responsibilities* to allow Plaintiff to go home or otherwise objectively engage in personal activities for a period of 24 hours or more *unimpeded by his employment activities related to the commercial motor vehicle* assigned to him by the Defendants; and/or in the sleeper berth while awaiting a cognizable dispatch and/or during such other times mandated by the FMCSR under 49 Code of Federal Regulations [C.F.R.] Part 395, Sec. 395.3), as they were otherwise informed and required by law to do.

21. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 through 20 (*supra*), Defendant KNIGHT REFIGERATED wired or caused to be wired to Plaintiff

while he was engaged in and/or as he was otherwise affected by interstate commerce, a false statement of income earnings that willfully calculated and provided for the disbursement of *an underpayment* of Plaintiff's *wages and other earnings* for the pay period ending on 07/19/2009; and for each of the next consecutive weekly pay period through to the weekly pay period ending on 09/27/2009.

22. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 through 20 (*supra*), Defendant SWIFT wired or caused to be wired to Plaintiff while he was engaged in and/or as he otherwise was affected by interstate commerce, a false statement of income earnings that willfully calculated and provided for the disbursement of *an underpayment* of Plaintiff's *wages and other earnings* for the pay period ending on 11/25/2012; and for each of the next consecutive weekly pay period through to the weekly pay period ending on 01/06/2013.

23. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 through 20 (*supra*), Defendant SWIFT wired or caused to be wired to Plaintiff while he was engaged in and/or as otherwise affected by interstate commerce, a false statement of income earnings that willfully calculated and provided for the disbursement of *an underpayment* of Plaintiff's *piece rate, and other earnings* for the pay period ending on 01/13/2013; and for each of the next consecutive weekly pay period through to the weekly pay period ending on 01/27/2013.

24. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 through 20 (*supra*), Defendant SWIFT wired or caused to be wired to Plaintiff while he was engaged in and/or as otherwise affected by interstate commerce, a false statement of income earnings that willfully misrepresented, calculated and provided for the disbursement of *piece rate, and/or other earnings* for the pay period ending on 02/03/2013; and for the

next consecutive weekly pay period through to the weekly pay period ending on 02/10/2013.

25. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 through 20 (*supra*), Defendant SWIFT wired or caused to be wired to Plaintiff while he was engaged in and/or as otherwise affected by interstate commerce, a false statement of income earnings that willfully calculated, misrepresented and provided for the disbursement of *an underpayment* of Plaintiff's *piece rate, and other earnings* for the pay period ending on 02/17/2013; and for each of the next consecutive weekly pay period through to the weekly pay period ending on 05/26/2013 (including such income property Plaintiff should have acquired, but for the Defendants' adjustment to Plaintiff's availability for dispatch from May 21, 2013 through December 31, 2013).

26. Plaintiff is further informed and believes and thereupon alleges that in furtherance of the scheme to defraud Plaintiff described in paragraphs 15 through 20 (*supra*), on or about May 16, 2013, Defendant HELENSKI by and/or through the usage of wire services engaged in or the activities of which affected interstate commerce, arranged for or allowed the assignment of a dispatch to Auburn, WA from Rocklin, CA that was *effectively late* when assigned, and impossible for Plaintiff to complete due to the receiver's hours of operation, the travel distance required, and Plaintiff's responsibilities under FMCSR.

27. It is further alleged that by and/or through the usage of wire services engaged in or the activities of which affected interstate commerce, Plaintiff accepted the dispatch under an agreement that he would be in no way penalized for the late delivery of the dispatched freight to the receiver.

28. Plaintiff alleges that at the point of delivery Defendant HELENSKI had willfully failed or refused to coordinate or otherwise communicate to the receiver Plaintiff's blamelessness for the lateness of the delivery; nor establish or coordinate an

alternative time for the delivery. Consequently, Plaintiff was subjected to the unlawful activities of the consignee, to wit the consignee's attempt to unlawfully obtain the income property of Plaintiff without due process, through their demand for the collection of an unlawful debt characterized as a $50.00 *"late delivery"* penalty in order to accept the delivery, for purposes of permitting the release of plaintiff from that assigned dispatch to be able to become available for a subsequent paid dispatch, knowing said demand to be unlawful.

29. It is alleged that upon Plaintiff's refusal to submit to paying the sum indicated in paragraph 28 (*supra*), waiting on the property of the receiver in excess of 12 hours for Defendant HELENSKI to resolve the matter and another hour driving to Defendant SWIFT's Sumner, WA terminal, Plaintiff under protest returned to Defendant SWIFT's Sumner, WA terminal and dropped the loaded trailer in a designated spot for loaded trailers, with the intent for the freight in it to be reassigned to another driver for delivery, and to thereafter have the truck placed in "shop status" for necessary maintenance and repairs (whereupon the truck remained in "shop status" until 05/20/2013, at 2300 hours).

30. Plaintiff alleges that after arriving at Defendant SWIFT's Sumner, WA terminal, Defendant HELENSKI at first refused to reassign the dispatch, and during the course of the heated debate regarding the matter, threatened Plaintiff with termination if Plaintiff failed to accede to his and the demands of Defendant SWIFT's receiver customer, by returning to the Auburn, WA, consignee with the freight and a company *comm-check payment* in said amount immediately following the truck being taken out of shop status.

31. Plaintiff alleges a similar incident as that described in the second sentence of paragraph 28 (*supra*), occurring in September 2009, while Plaintiff was a resident of Washington, working as an OTR Driver for Defendant KNIGHT REFIGERATED, in which Plaintiff was informed by (and based upon that information believed) Defendant KNIGHT REFIGERATED was assuming the responsibility for the therein described *"late delivery penalty"*; and having relied thereupon, and pursuant to which only after

completing and delivering the $50.00 *comm-check payment* to the consignee, Plaintiff alleges he discovered he had been fraudulently induced by Knight Refrigerated by and/or through the usage of wire services engaged in or the activities of which affected interstate commerce, in that said $50.00 payment had subsequently been unlawfully collected from Plaintiff's income property earnings associated with that dispatch, in violation of **18 U.S.C. § 1962**, and **RCW 49.52.050**(4) (*cf.* **RCW 49.52.080**).

32. Plaintiff alleges that in view of such prior experience as described in paragraph 31 (*supra*), he refused the demands of Defendant HELENSKI to pay the consignee with a company *comm-check*, and unsuccessfully appealed to the presumed reasonableness of Defendant STOCKING, (whom it is further alleged sided with Defendant HELENSKI, by insisting that Plaintiff had an obligation to complete the dispatched load as directed, and make the payment [in further violation of **18 U.S.C. § 1962**, and **RCW 49.52.050**(4), *cf.* **RCW 49.52.080**]; the egregious and unlawful nature thereof, notwithstanding); whereupon because of Plaintiff's continued refusal to accede to those demands, Plaintiff was *instructed by Defendant STOCKING* to wait in the *commercial motor vehicle* assigned to him by Defendant SWIFT, while Defendant STOCKING discussed the matter further with Defendant HELENSKI.

33. . Plaintiff alleges that by and/or through the usage of wire services engaged in or the activities of which affected interstate commerce, that after the events described in paragraph 32 (*supra*), Plaintiff received a message from Defendant HELENSKI upon his Qualcomm communication device (affixed to the interior dashboard of the truck), indicating a new proposed time range for the rescheduled delivery, without addressing the matter of the heretofore alleged attempt to collect an unlawful debt demanded by Defendant SWIFT's customer, with the heretofore alleged concurrence by Defendant SWIFT in violation of **18 U.S.C. § 1962** and **RCW 49.52.050**(4) (*cf.* **RCW 49.52.080**).

34. Plaintiff alleges that unsatisfied with the disposition of the events described in paragraphs 26 through 30 and 32 through 33 (*supra*), Plaintiff nonetheless acknowledged

the new delivery time range; and then approximately 15 minutes later (*i.e.*, on or about 1530 hours on 05/20/2013), Plaintiff returned to the dispatch office (located in Defendant SWIFT's Sumner, WA terminal), with the Bills of Lading (B.O.L.) for the Auburn, WA dispatch, and delivered them to the on-duty dispatcher/receptionist DM for their placement upon Defendant HELENSKI's desk.

35. Plaintiff further alleges that he informed Defendant HELENSKI of Plaintiff's desire to be paid for his labor regarding the above described dispatch (**1**) from Rocklin, CA to Auburn, WA, (**2**) his hold time in Auburn, WA at the delivery location, and (**3**) the loaded miles associated with returning the freight to Defendant SWIFT's Sumner, WA terminal (following the unsuccessful attempt to deliver the load to the consignee in Auburn, WA). Plaintiff further alleges that he also informed Defendant HELENSKI of Plaintiff's desire to be paid for Plaintiff's breakdown, and hold status, respectively; *i.e.*, subsequent to his arrival at Defendant SWIFT's Sumner, WA terminal on 05/20/2013, after leaving the Auburn, WA consignee.

36. Plaintiff is informed and believes and thereupon alleges that following several unsuccessful attempts to reach an equitable resolution of the dispute over the matters described in paragraphs 26 through 33 (*supra*), Defendant HELENSKI acting under the supervision of Defendant STOCKING, and with the intent to aid and benefit the operations of Defendant SWIFT (in the course and scope of their respective employments), in furtherance of the scheme to defraud Plaintiff described in paragraphs 22 through 33 (*supra*), by and/or through the usage of wire services engaged in or the activities of which affected interstate commerce, attempted to extort Plaintiff's cooperation with their alleged proscribed and/or otherwise unlawful demands (as alleged in paragraphs 30 and 32 [*supra*]) in violation of **18 U.S.C. § 1962**, and **RCW 49.52.050**(4) (*cf.* **RCW 49.52.080**), through the removal of Plaintiff from availability for a dispatch assignment until on or about 12/31/2013 at 2359 hours; and to also unlawfully retaliate against Plaintiff for raising the suggestion that the Defendants (and each of them) may

have committed wage abuses in violation of Washington laws.

37. Plaintiff further alleges that on or about 06/18/2013, Defendant SWIFT acting through its executive, administrative or other professional managers and supervisory personnel (inclusive of SWIFT's co-defendants herein) further threatened to collect from Plaintiff an unlawful debt, in regard to their asserted cost of the student loan encompassing Plaintiff's pre-orientation training, in violation of **18 U.S.C. § 1962**, and **RCW 49.52.050**(4) (*cf.* **RCW 49.52.080**).

38. Plaintiff alleges that in pursuit of his asserted claim of wage abuses that sometime between the end of October and beginning of November 2013, Plaintiff engaged in the exchange of email communications with Defendant MARTINSON, whom in the course and scope of her employment, with the intent to aid and benefit the operations of Defendant SWIFT by and/or through the usage of both mail and wire services engaged in or the activities of which affected interstate commerce, and acting in pursuit thereof, whereby it is alleged Defendant MARTINSON sought to further the scheme to defraud Plaintiff described in paragraphs 15 through 37 (*supra*), under the false pretense of her communicated purported aim to equitably address Plaintiff's underpayment "concerns", and by way of distraction and subterfuge it is alleged rather misrepresented and misled Plaintiff into a false belief and reliance upon the integrity of Defendant MARTINSON's investigation into, and her findings regarding Defendant SWIFT's outstanding obligation affecting the amount of Plaintiff's previously asserted unpaid income property; as well as the sufficiency of Defendant SWIFT's internal action to remedy said claims, so as to overcome Plaintiff's confidence in the viability of the amounts he believed to be owed, and any basis for Plaintiff's previously asserted claim in regard thereto, in violation of **18 U.S.C. § 1962**, **RCW 49.44.060,** and **RCW 49.52.050**(4) and (5) (*cf.* **RCW 49.52.080**; inasmuch as Defendant MARTINSON had a duty to accurately, competently and fully disclose Defendant SWIFT's obligations thereunder, in view of Defendant MARTINSON's failure or refusal to do so. In the latter regard, Plaintiff alleges that in

addition to the routine general practice of unlawfully withholding earned income property from drivers such as is described in paragraphs 21 through 25 (*supra*), the heretofore alleged *pattern of racketeering activity* described in paragraphs 15 through 18 and paragraph 20 (*supra*), included the routine general practice of Defendant KNIGHT and Defendant SWIFT, acting through their respective executive, administrative or other professional managing and supervisory personnel associated in fact, the alleged scheme of generating driver dispatch assignments (as generally applied to the employment of first year drivers), with the intent to initially dispatch the driver far from their residence and home terminals, whereupon through the subsequent assignments of short-haul (*i.e.*, less than 300 mile) and/or hostler type dispatches designed to consume FMCSR allotted hours of service (HOS) that for purposes of the *piece-rate* compensation otherwise permitted under **WAC 296-126-021(1)** and **WAC 296-128-012(1)** *when strictly applied*, would often generally result in the generation of driver income statements with payments less than the driver would be entitled to under WMWA for even a 40 hour week at WMWA rates, even when the drivers' HOS and/or other non-driving responsibilities require the attendance of the driver in excess of 40 hours in a given work week; and that the foregoing alleged practice of the Defendants is allegedly willfully calculated for and exercised with the inescapable intent to produce a chilling effect upon a given driver's ability to voluntarily terminate his or her employment with the attend affect of adversely impacting upon the driver's ability to independently fund a return to their residence or home terminal for that purpose, without a concurrent dispatch in that direction by the Defendants (and each of them).

39. Plaintiff alleges that subsequently, in February 2014, Defendant SWIFT acting upon the recommendation of Defendant MARTINSON, did issue a check in payment to Plaintiff which was deposited in the mail for delivery to Plaintiff, which it is alleged further falsely represented, and in furtherance of the continuing false pretense of the Defendants credibility, purported to be accurately calculated for the liquidation of all of

Plaintiff's theretofore asserted unpaid wages and income earnings property claims, in violation of **18 U.S.C. § 1341, § 1343** and **§ 1962**, and the provisions of **RCW 49.44.060** and **RCW 49.52.050**(4) (*cf.* **RCW 49.52.080**).

40. Plaintiff is further informed and believes and thereupon alleges that pursuant to numerous Federal and State Court legal decisions on the question of employers' obligations and responsibilities regarding the payment of earnings to their employees directly and/or indirectly related to Washington State's Minimum Wage Act (**RCW ch. 49.46**) (WMWA), Defendant SWIFT was fully informed by such Court decisions of its duties and obligations under WMWA, and the applicable criteria to be applied in determining the compensation a wage earner is due, as early as October 18, 2007; similarly, it is alleged that Defendant SWIFT was fully informed of its duties and obligations under WMWA, and the applicable criteria to be applied in determining the compensation a piece rate worker is due as early as July 16, 2015 (among other more contemporary decisions further clarifying the scope of such duties and obligations under the WMWA).

41. Plaintiff alleges that in furtherance of the allegations of paragraph 40 (*supra*), Defendant SWIFT was fully informed of the retroactive and prospective application of those decisions as early as February 11, 1976; and the impact therefor upon their outstanding obligation encompassing their liability for the unliquidated damages sought herein by Plaintiff with regard thereto (including all prejudgment interest entitlements thereon), in regard to the alleged unlawful withholding of Plaintiff's income property.

42. Plaintiff is further informed and believes and thereupon alleges that on or about September 18, 2017, in furtherance of the alleged scheme to defraud Plaintiff described in paragraphs 15 through 25 (*supra*), Defendant KNIGHT and Defendant SWIFT sought to apply the *income received and/or derived*, *directly or indirectly*, *from the pattern of racketeering activity alleged herein*, and to unlawfully use or invest, directly or indirectly the proceeds thereof (along with the net benefit of the settlements and release of claims

described in paragraph 17 [*supra*]), in the *acquisition and/or maintenance of* an interest in and/or the establishment or *continued operation of Knight-Swift*, in violation of **18 U.S.C. § 1962(a)**, **(b)** and **(d)**.  Accordingly, Plaintiff alleges that Knight-Swift, *represents a proscribed enterprise engaged in and the activities of which affects interstate* and *foreign commerce*.  Plaintiff further alleges that in aid of the latter sentence of this paragraph, Defendant KNIGHT and Defendant SWIFT's co-defendants are in violation **18 U.S.C. § 1962**.

43. Plaintiff further alleges that in connection with the class action proceedings in *Hedglin v. Swift Transportation Company of Arizona, LLC*, Case No. 3:16-cv-05127 BHS (ultimately filed in the U.S. District Court, Western District of Washington, Tacoma Division), Plaintiff was identified by Defendant SWIFT as a prospective "class member" (Plaintiff's subsequent timely refusal of consent to participate therein, and request to be excluded therefrom, notwithstanding), in violation of **18 U.S.C. § 1962(c)** and **(d)**, and **RCW 49.44.060**; and mailed or caused to be mailed a false reporting of Plaintiff's earnings while in Defendant SWIFT's employ, with the intent to materially adversely impact Plaintiff right to the full measure of such alleged unlawfully withheld income property entitlements alleged in paragraphs 22 through 25 (*supra*).

44. Plaintiff further alleges that in furtherance of *continuing* the *pattern of racketeering activity heretofore alleged*, Defendant SWIFT sought to further their alleged attempt to defraud Plaintiff of his income property (by and/or through the usage of mail and/or wire services engaged in or the activities of which affected interstate commerce), in providing false weekly on duty hours and earnings information regarding the period of Plaintiff's employment by Defendant SWIFT to the "Putative Class Representative's attorneys" with the intent to attempt to understate Defendant SWIFT's obligation and responsibility in regard thereto; and to willfully misrepresent the actual outstanding accrued liability, and such continuing accrual of Defendant SWIFT's obligation to pay Plaintiff's unliquidated earnings in accordance with such obligations as prescribed by law

in violation of **18 U.S.C. § 1962, RCW 49.44.060**, and **18 U.S.C. § 1962(c)** and **(d)**.

45. Plaintiff is further informed and believes and thereupon alleges that by and/or through the usage of the mail and/or wire services engaged in or the activities of which affected interstate commerce, Defendant SWIFT has fraudulently sought to forestall Plaintiff's legitimate right to **(a)** enjoin Defendant SWIFT from continuing in their alleged routine practice that resulted in the alleged underpayment and/or unlawful withholding of Plaintiff's income property (and as affects other drivers, *in general*), **(b)** seek and obtain relief regarding the full measure of Plaintiff's legitimate income property that Defendant SWIFT is alleged to have routinely withheld from Plaintiff herein (and as routinely withheld from said Defendant's drivers, *in general*), **(c)** such substantive prejudgment interest on any liquidated damage that may have been found in regard to subparagraph **(b)** of this paragraph (*supra*), **(d)** such substantive remedial awards in connection thereto, and **(e)** all additional exemplary and/or punitive damages that may have been awarded based upon evidence found to support the justification for same (the sum total of these potential awards for findings consistent with subparagraphs **(c)** through **(e)** of this paragraph that would have far exceeded that potentially awarded for findings consistent with *only* subparagraph **(b)** of this paragraph) through their alleged settlement and release scheme.

46. Plaintiff is further informed and believes and thereupon alleges that by and/or through the usage of the mail and/or wire services engaged in or the activities of which affected interstate commerce, Defendant SWIFT has sought through intimidating threats of prolonged legal maneuvering (with the associated threatened increase of the costs of pursing legal actions against Defendant SWIFT, and such prospective substantive and/or judicial support aggressively sought after by Defendant SWIFT, in furtherance of their continuing desire for and active efforts in avoidance of properly compensating its commercial driver workforce), and conspired in the operation of its historic willingness to accede to routine settlements of class action cases in avoidance of the potential awards described in paragraph 45 (*supra*), in a manner which Plaintiff alleges sought primarily to

only serve to the benefit such Putative Class Representative Plaintiffs (and their attorneys), to the detriment of the prescribed remedy available to non-representative Class members, in aid of Defendant SWIFT's alleged ongoing evasion of such preclusion Orders, generally and, *specifically*, the awards described in subparagraphs (**a**) through (**e**) of paragraph 45 (*supra*), such as is evidenced by both the underlying considerations and terms of the Settlements, Final Orders or Judgments Granting Approval of Class Action Settlements (*e.g.*, those effecting settlements procured *and/or* that may prospectively be procured in (**1**) *Slack et al. v. Swift Transportation Co. of Arizona, LLC* (W.D. Wash. Case No. 3:11-cv-05843-BHS) [*i.e.*, a *Dedicated Driver* controversy over WMWA Overtime, alleged Per Diem abuses and Unpaid Driver Orientation] and (**2**) *Hedglin v. Swift Transportation Co. of Arizona, LLC* (W.D. Wash. Case No. 3:16-cv-05127-BHS) [*i.e.*, a *Commercial Truck Driver* complaint about unpaid separate hourly "Rest" and "Meal" breaks, and failure to pay for all hours worked and all wages due at the applicable rates, including unpaid overtime at established pay periods under WMWA, *inter alia* [where the claims of the complaint were ultimately amended to assert a cause of action for unpaid wages for rest break time pursuant to WAC 296-126-092, failure to pay all wages due for compensable time associated with non-driving tasks, a *collateral failure* to pay overtime for hours worked in excess of 40 hours per week, and double damages for the alleged willful withholding of the same wages under RCW 49.52.050 and under 49.52.070], and (**3**) the terms of the upcoming Settlement Approval Hearing in the *Dusen et al. v. Swift Transportation Company Inc. et al.* matter (D. Ariz. Case No. 2:10-cv-00899-JWS [*i.e.*, an Owner Operator / Lessee *misclassification* as "Independent Contractors'" *action*, with collateral claims under the federal "Fair Labor Standards Act" (FLSA) alleging violations thereof], *inter alia*), without there having been otherwise obtained thus far any mandate to enjoin Defendant SWIFT *from continuing the pattern of racketeering activities* alleged in this Cause of Action, encompassing the alleged pattern of unlawful income property

withholding activity *collateral* and/or *parallel to* those underlying the "*labor law*" earnings and pay disputes encompassed by and litigated in the latter identified actions.

47. Plaintiff alleges that as a result of the alleged *pattern of racketeering activities* of the Defendants heretofore alleged, Plaintiff has been and continues to be deprived of income property in amounts to be determined at trial (**RCW 49.46.090(1)**).   Plaintiff further alleges that Defendant KNIGHT and Defendant SWIFT are liable to Plaintiff pursuant to **RCW 49.52.070**, for the ongoing failure or refusal of Defendants to acknowledge and/or to provide for the liquidation of amounts owed by its' condut to date (inclusive of the conduct of Defendant SWIFT's co-defendants herein) for an award of twice such amounts deprived, by way of exemplary damages (*including prejudgment interest* thereon at the rate prescribed by **RCW 19.52.010(1)**); and to such further and other remedial awards, and to appropriate attorney's fees and costs related thereto, substantively provided for under **18 U.S.C. § 1964(c)**.

48. Accordingly, as a consequence of the alleged *pattern of racketeering activities* of the Defendants (and each of them), Plaintiff requests judgment for money *Damages* — *i.e.*, *specifically*, that the Court grant Plaintiff the recovery of money damages in the form of "actual" (*inclusive of* such basic income property proven to have been unlawfully withheld, and the prescribed *substantive prejudgment interest thereon*), compensatory, exemplary/punitive damages; and all other *remedial damage awards* as are permitted by law for the alleged injuries occasioned by the alleged pattern of racketeering activity described in paragraphs 15 through 46 (*supra*) of this Count of this Cause of Action, encompassing the alleged violation of **18 U.S.C. § 1341** and **§ 1343** attendant to the alleged unlawful attempts by the Defendants (and each of them) to fraudulently withhold and/or otherwise provide for the unlawful withholding of Plaintiff's income property, in furtherance of their *alleged interest and participation* in the establishment of an enterprise sought to be and ultimately formed by the Defendants (and each of them) in violation of **18 U.S.C. § 1962** to Plaintiff's detriment.

49. Plaintiff further requests judgment for *Declaratory Relief — i.e.*, *specifically*, that the Court *declare* that (**a**) the regulatory provisions of **WAC 296-128-012(1)** to be applicable only to "Dedicated" drivers capable to returning to their SWIFT home terminals or assigned SWIFT dedicated customer operations or distribution terminals allowing for the driver to take at least *one full day of home time per week*; (**b**) the regulatory provisions of **WAC 296-128-012(2)** to be applicable OTR drivers, dispatched on one or more dispatch assignments per week whom while under the control and direction of Defendant SWIFT are prevented *in general*, and *more specifically* insofar as it is alleged Plaintiff "was prevented" from returning to his SWIFT home terminal for the purpose of allowing Plaintiff to take at least *one full day of home time per week*; (**c**) the routine institution of "late penalties" as described in paragraphs 28 and 31 (*supra*), to be a collection of and/or an attempt to collect an unlawful debt as proscribed by **18 U.S.C. § 1962**; and (**d**) Plaintiff, as an OTR driver, is/was entitled to *all emoluments* consistent with the criteria established in *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 48-49, 169 P.3d 473, 2007 Wash. LEXIS 792 (Wash. 2007), *inter alia*, while deployed.

50. Plaintiff further requests judgment for *Injunctive Relief — i.e.*, *specifically*, that (**a**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be enjoined from continuing the alleged unlawful withholding of Plaintiff's liquidated income property, and any future performance of the acts alleged and complained of herein that allows or permits the Defendants to profit directly and/or indirectly from *income received and/or derived directly or indirectly, from the alleged pattern of racketeering activity described in* paragraphs 15 through 46 of this Count of this Cause of Action (*supra*); (**b**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be enjoined from profiting from, and otherwise exercising and/or holding any interest in the financial dealing of *Knight-Swift* as a

consequence of *the alleged pattern of racketeering activity described* in this Count of this Cause of Action leading to the establishment of *Knight-Swift* in violation of **18 U.S.C. § 1962(a)**; and (**c**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be Ordered (following any recovery by Plaintiff of the damages asserted and sought by the terms of paragraph 48 [*supra*], to (*i*) ascertain, recover, report and surrender to *Knight-Swift* all the profits said Defendants that have been accumulated, and/or have been achieved and/or received since the official incorporation of *Knight-Swift* (inclusive of all of its subsidiaries), (*ii*) divest ownership of all securities and other holdings the Defendants (and each of them) own in *Knight-Swift*, (*iii*) make a public disclosure of and to surrender all assets (both tangible [*i.e.*, buildings, currency, equipment, fixtures, furnishings land real property]; and/or intangible [*i.e.*, those that are otherwise electronically convertible]), and other holdings of *Knight-Swift* into receivership for the purpose of ascertaining their value in furtherance the dissolution of *Knight-Swift*, (**d**) and require the market value of the proceeds of such *sale to be equally distributed to all drivers past and present* employed by the Defendants (and each of them), *Provided* Plaintiff *be excluded therefrom* if such driver distribution results in *an amount equal to or below any award for damages* obtained by Plaintiff as a consequence of the *pattern of racketeering activity* alleged herein in accordance with the provisions of the first sentence of **18 U.S.C. § 1964(a)**.

## COUNT 2

### 18 U.S.C. § 1581, 1589 and 1590

### (*Peonage*, *Forced Labor* and *Trafficking*)

51. Plaintiff incorporates paragraphs 3 and 5 of the *Introductory* section of this Complaint (*at pp.* 2 and 3, respectively (*supra*)); and paragraphs 6 through 14 (*at pp.* 3 to 6 (*supra*)), as though fully set forth herein.

52. As more particularly alleged in COUNT 1 and COUNT 3 of this Cause of Action (*beginning at pp.* 5 (*supra*) and 30 (*infra*), respectively), it is alleged that Defendant KNIGHT and Defendant SWIFT *maintain an interest in*, and/or participates in *an enterprise* (as defined by **18 U.S.C. § 1961(4)**) the activities of which affect interstate and foreign commerce, in that Defendant KNIGHT (*inclusive of* its subsidiary Defendant KNIGHT REFRIGERATED, inasmuch as they share the same core group of executive, administrative and other professional managing and supervisory personnel) and Defendant SWIFT, have fashioned or formed and/or permitted the union of such to exist associated in fact, through which it is alleged the Defendants have conspired to violate *the substantive provisions of the* Racketeer Influenced and Corrupt Organizations Act (RICO) (codified under **18 U.S.C. § 1961**, *et seq.*), *through the commission of two or more acts forming a pattern of racketeering activity* (as defined in **18 U.S.C. § 1961(1)(B) and (5)**), which poses a threat of *continued criminal activity* by, and/or under the direction of their respective executive, administrative or other professional managers and supervisory personnel (inclusive of Defendant SWIFT's co-defendants herein).

53. As an initial matter, Plaintiff alleges that Defendant KNIGHT and Defendant SWIFT, by and/or through their respective executive, administrative or other professional managers and supervisory personnel associated in fact, controlled when, where and how Plaintiff delivered freight, as well as the freight dispatches assigned; and that Defendant KNIGHT and Defendant SWIFT, Defendant STOCKING and Defendant HELENSKI (and each of them), controlled the route Plaintiff would use.

54. Plaintiff is further informed and believes and thereupon alleges that said Defendants (and each of them), controlled virtually every aspect of the way Plaintiff performed his work as an over-the-road (OTR) truck driver employed by the Defendants; and that under the direction of the Defendants (and each of them), delegated to Plaintiff the physical responsibility for the control of the equipment Plaintiff was assigned and used (including its condition, determination of when maintenance thereon was required, and

the security thereof) in pursuit of Plaintiff's OTR duties engaged in or the activities of which affected interstate and/or foreign commerce.

55. Plaintiff further alleges that Defendants acting through their respective executive, administrative or other professional managers and supervisory personnel (inclusive of Defendant SWIFT's co-defendants herein), by and/or through the usage of wire services in interstate commerce, (**a**) failed or refused to provide for the communication of and to otherwise properly communicate to Plaintiff when Plaintiff was otherwise either *on duty* "*not-driving*" for purposes of the commencement and duration of prescribed wage entitlements under Washington law (including overtime), (**b**) further acted to unlawfully obtained and retain the labor or services of Plaintiff by means of *forced holds, physical restraint* and/or *threats of serious harm to* Plaintiff's business, property and reputation in violation of **18 U.S.C. § 1581(a)** and **§ 1589**; and (**c**) that at all applicable times, the defendants acting through their respective executive, administrative or other professional managers and supervisory personnel (inclusive of Defendant SWIFT's co-defendants  herein), performed the acts alleged in subparagraphs (**a**) and (**b**) of this paragraph (*supra*), knew that in doing so were committing general acts of unlawful income property withholding to Plaintiff's detriment, for the purpose of facilitating the heretofore alleged unlawful restraint.

56. Plaintiff alleges that Defendant SWIFT knew that Defendant SWIFT's program of forcing interstate drivers *generally*, and Plaintiff in particular, to work without full compensation as carried out through its culture and the historic nature in which Plaintiff was paid was unlawful; including the routine practice of withholding dispatch assignment while Plaintiff was located far away from his residence and home terminal, as a consequence of any prior dispatch of the Defendants (and each of them), in violation of **18 U.S.C. § 1581(a)**, **§ 1589** and **§ 1590**.

57. As regards Defendant SWIFT, Plaintiff alleges that even though Defendant SWIFT knew Plaintiff possessed a valid Class A commercial drivers' license, authorizing

Plaintiff to drive commercial combination vehicles (including double, triples, and hazardous materials), Defendant SWIFT insisted that Plaintiff as a condition of employment attend their driving school in Lewiston, Idaho, as though Plaintiff were not commercially licensed at all; and thereby creating and causing Plaintiff to incur a debt in excess of $4,400.00 (USD) to Defendant SWIFT, subject to proportional collection through regular deductions from Plaintiff's prospective OTR income property earnings, and holding Plaintiff at ransom for such repayment consequential to Plaintiff's forced participation in Defendant SWIFT's training program that it is alleged Plaintiff was subjected to in violation of **18 U.S.C. § 1581(a)**, **§ 1589** and **§ 1590**.

58. Plaintiff alleges that Defendant SWIFT's practice is to not pay the required minimum wage under WMWA, nor overtime wage for each and every hour worked in excess of 40 hours in a week (including but not limited to time spent in and out of Plaintiff's home State allegedly forcibly involuntarily held in Defendant SWIFT's truck without a moving dispatch, such as e.g., those hours wherein Plaintiff is euphemistically categorized as "*off duty*", while still being required to monitor SWIFT's *in-truck* electronic communications equipment [*i.e.*, Qualcomm] and monitor and secure Defendant SWIFT's combination vehicles, under threat of financial loss for the failure or refusal to do so in violation of **18 U.S.C. § 1581(a) and § 1589**), as well as such required under the substantive and regulatory laws prescribed and/or promulgated by Washington (*e.g.*, RCW 49.46.005, RCW 49.46.020, RCW 49.46.090, RCW 49.52.050, and RCW 49.52.070, WAC 296-126-021, WAC 296-126-092 and WAC 296-131-02, *inter alia*). Because Plaintiff did not receive the minimum wage for *on duty* "*not-driving*" time or other duties performed (including those hours when euphemistically categorized as "*off duty*"), and Plaintiff was routinely forced to work in excess of 40 hours a week without receiving overtime compensation for those hours at Washington's minimum and/or overtime rates (nor the reasonable equivalent thereof).

59. Plaintiff alleges Defendant SWIFT under the direction of its executive, administrative or other professional managers and supervisory personnel associated in fact engaged in a *pattern of racketeering activity* proscribed under the provisions of **18 U.S.C. § 1962**, in that it is alleged they knew or should have known that the conduct as heretofore described in paragraph 58 (*supra*) was unlawful, and that Plaintiff would be injured in his property as a result thereof.

60. Plaintiff alleges that Defendant SWIFT knew or should have known that its compensation practices affecting Plaintiff under the forgoing circumstances, were in violation of Washington's MWA, and were otherwise illegal in light of *IBP v. Alverez*, 399 F.3d 894, 912-13 (9th Cir. 2003), in which the Ninth Circuit Court of Appeals determined under the WMWA that employees are *entitled to receive the minimum wage for each and every hour worked.*

61. Plaintiff further alleges that at all applicable times following Plaintiff's in-truck mentoring, Defendant SWIFT did not pay Plaintiff either minimum wages for *on duty* "*not-driving*" time, for time in the performance of his other employment responsibilities when euphemistically categorized as "*off duty*", nor for overtime or the reasonable equivalent thereof for such hours associated therewith, in excess of the basal 40 hour criterion encompassed by each work week.

62. Plaintiff alleges Defendant SWIFT maintains some manner of records of the hours worked by Plaintiff, but not the records required by law.

63. Plaintiff alleges he worked in excess of 40 hours a week on a regular basis.

64. Plaintiff alleges that Defendant SWIFT knew or should have known that its employee monetary compensation practices would adversely affect Plaintiff; and that they were unlawful.

65. Accordingly, as a consequence of the alleged *pattern of racketeering activities* of the Defendants (and each of them), Plaintiff requests judgment for money *Damages — i.e., specifically*, that the Court grant Plaintiff the recovery of money damages in the form

of "actual" (*inclusive of* such basic income property proven to have been unlawfully withheld, and the prescribed *substantive prejudgment interest thereon*), compensatory, exemplary/punitive damages; and all other *remedial damage awards* as are permitted by law for the alleged injuries occasioned by the alleged pattern of racketeering activity described in paragraphs 52 through 64 (*supra*), encompassing the alleged violations of **18 U.S.C. § § 1581(a)**, **§ 1589** and **§ 1590**, respectively, attendant to the alleged unlawful acts of peonage that it is alleged Plaintiff was subjected to in connection with the alleged unlawful withholding of Plaintiff's income property to date by the Defendants (and each of them), in furtherance of their *alleged interest and participation* in the establishment of an enterprise sought to be and ultimately formed by the Defendants (and each of them) in violation of **18 U.S.C. § 1962** to Plaintiff's detriment.

66. Plaintiff further requests judgment for *Declaratory Relief — i.e., specifically,* that the Court *declare* that (**a**) the regulatory provisions of **WAC 296-128-012(1)** to be applicable only to "Dedicated" drivers capable to returning to their SWIFT home terminals or assigned SWIFT dedicated customer operations or distribution terminals allowing for the driver to take at least *one full day of home time per week*; (**b**) the regulatory provisions of **WAC 296-128-012**(2) to be applicable OTR drivers, dispatched on one or more dispatch assignments per week whom while under the control and direction of Defendant SWIFT are prevented *in general*, and *more specifically* insofar as it is alleged Plaintiff "was prevented" from returning to his SWIFT home terminal for the purpose of allowing Plaintiff to take at least *one full day of home time per week*; and (**c**) Plaintiff, as an OTR driver, is/was entitled to *all emoluments* consistent with the criteria established in *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 48-49, 169 P.3d 473, 2007 Wash. LEXIS 792 (Wash. 2007), *inter alia*, while deployed.

67. Plaintiff further requests judgment for *Injunctive Relief — i.e., specifically,* that (**a**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in

fact) be enjoined from continuing the alleged unlawful withholding of Plaintiff's liquidated income property, and any future performance of the acts alleged and complained of herein that allows or permits the Defendants to profit directly and/or indirectly from *income received and/or derived directly or indirectly, from the alleged pattern of racketeering activity described in* paragraphs 52 through 63 of this Count of this Cause of Action (*supra*); (**b**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be enjoined from profiting from, and otherwise exercising and/or holding any interest in the financial dealing of *Knight-Swift*  as a consequence of *the alleged pattern of racketeering activity described* in this Count of this Cause of Action leading to the establishment of *Knight-Swift* in violation of **18 U.S.C. § 1962(a)**; and (**c**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be Ordered (following any recovery by Plaintiff of the damages asserted and sought by the terms of paragraph 64 [*supra*]), to (*i*) ascertain, recover, report and surrender to *Knight-Swift*  all the profits said Defendants that have been accumulated, and/or have been achieved and/or received since the official incorporation of *Knight-Swift* (inclusive of all of its subsidiaries), (*ii*) divest ownership of all securities and other holdings the Defendants (and each of them) own in *Knight-Swift* , (*iii*) make a public disclosure of and to surrender all assets (both tangible [*i.e.*, buildings, currency, equipment, fixtures, furnishings land real property]; and/or intangible [*i.e.*, those that are otherwise electronically convertible]), and other holdings of *Knight-Swift*  into receivership for the purpose of ascertaining their value in furtherance the dissolution of *Knight-Swift* , (**d**) and require the market value of the proceeds of such *sale to be equally distributed to all past and present commercial drivers* employed by the Defendants (and each of them), *Provided* Plaintiff *be excluded therefrom* if such driver distribution results in *an amount equal to or below any award for damages* obtained by Plaintiff as a

consequence of the *pattern of racketeering activity* alleged herein, in accordance with the provisions of the first sentence of **18 U.S.C. § 1964(a)**.

**COUNT 3**

**18 U.S.C. § 1951 and 1952**

(*Interference with Commerce by Threats or Violence*; and
*Interstate Travel or Transportation in Aid of Racketeering Enterprise*)

68. Plaintiff incorporates paragraphs 3 and 5 of the *Introductory* section of this Complaint (*at pp.* 2 and 3, respectively (*supra*)); and paragraphs 6 through 14 (*at pp.* 3 to 6 (*supra*)), as though fully set forth herein.

69. As more particularly alleged in COUNT 1 and COUNT 2 of this Cause of Action (*beginning at pp.* 5 and 23, respectively (*supra*)), it is alleged that Defendant KNIGHT and Defendant SWIFT *maintain an interest in*, and/or participates in *an enterprise* (as defined by **18 U.S.C. § 1961(4)**) the activities of which affect interstate and foreign commerce, in that Defendant KNIGHT (*inclusive of* its subsidiary Defendant KNIGHT REFRIGERATED, inasmuch as that they share the same core group of executive, administrative and other professional managing and supervisory personnel) and Defendant SWIFT, have fashioned or formed and/or permitted the union of such to exist associated in fact, through which it is alleged the Defendants have conspired to violate *the substantive provisions of the* Racketeer Influenced and Corrupt Organizations Act (RICO) (codified under **18 U.S.C. § 1961**, *et seq.*)*, through the commission of two or more acts forming a pattern of racketeering activity* (as defined in **18 U.S.C. § 1961(1)(B)** and **(5)**), which poses a threat of *continued criminal activity* by, and/or under the direction of their respective executive, administrative or other professional managers and supervisory personnel (inclusive of Defendant SWIFT's co-defendants herein).

70. Plaintiff alleges that in addition to the routine general practice of unlawfully withholding earned income property from drivers such as is described in paragraphs 21 through 25 (*supra*), the heretofore alleged *pattern of racketeering activit*y described in

paragraphs 15 through 18 and paragraph 20 (*supra*) of Count 1 of this Cause of Action that Defendant KNIGHT and Defendant SWIFT by and/or through the usage of mail and wire services engaged in or the activities of which affected interstate commerce, included the routine general practice of Defendant KNIGHT and Defendant SWIFT, acting through their respective executive, administrative or other professional managing and supervisory personnel associated in fact, of generating driver dispatch assignments (as generally applied to the employment of first year drivers), with the intent to initially dispatch the driver far from their residence and home terminals, whereupon through the subsequent assignments of short-haul (*i.e.*, less than 300 mile) and/or hostler type dispatches designed to consume FMCSR allotted hours of service (HOS) that for purposes of the *piece-rate* compensation otherwise permitted under **WAC 296-126-021(1)** and **WAC 296-128-012(1)** *when strictly applied*, would generally result in the generation of driver income statements with payments less than the driver would be entitled to under WMWA for even a 40 hour week at WMWA rates, even when the drivers' HOS and/or other non-driving responsibilities required the attendance of the driver in excess of 40 hours in a given work week upon the Defendants equipment; Plaintiff alleges that the foregoing alleged practice of the Defendants was willfully calculated for and exercised with the inescapable intent to produce a chilling effect upon a given driver's ability to voluntarily terminate his or her employment and/or independently fund a return to their residence or home terminal for that purpose, without a concurrent dispatch in that direction by the Defendants (and each of them) and to unlawfully withhold income property under WMWA in furtherance of the heretofore alleged goal and willful intent to further the ambition of the Defendants (and each of them) with the consequent routine accumulation of such unlawful pecuniary withholdings of earned income property from their drivers for use in their scheme to utilize those withholding toward the achievement of the prospective investments and/or purchases in pursuit of the Defendants ambition to acquire, maintain and/or merge the resultant increased value of its securities and such other holdings and/or those held by its

competitors in the transportation industry subsumed by said alleged pattern of racketeering activity, and in so doing exercised the practical effect of interfering and/or conspiring to interfere with commerce, by robbery or extortion in violation of **18 U.S.C. § 1951** and **§ 1952**.

71. Plaintiff further alleges that on or about September 23, 2009, and again on May 20, 2013, he was subjected to the unlawful activities of Defendant KNIGHT and Defendant SWIFT's the consignee customers, to wit the consignee's attempt to unlawfully obtain Plaintiff's income property, through their demand for and/or collection of an unlawful debt characterized as a $50.00 "*late delivery*" penalty, in order to accept delivery of the goods that Plaintiff had been dispatched to deliver to enable the release of Plaintiff from such dispatches in interstate commerce, for purposes of permitting the availability of plaintiff to be assigned a subsequent paid dispatch, knowing said demand to be unlawful.

72. Plaintiff fis informed and believes, and thereupon alleges that Defendant KNIGHT and Defendant SWIFT routinely encouraged and/or permitted the alleged collection of unlawful debt by their customer consignees described in paragraph 71 (*supra*) and required its drivers, generally, and Plaintiff in particular, under threat of adverse employment action and/or under color of official right to surrender to such demands, in violation of **18 U.S.C. § 1951** and **§ 1952** to Plaintiff's detriment.

73. Plaintiff alleges that Defendant KNIGHT and Defendant SWIFT knew or should have known that the threatening conduct described in paragraphs 70 to 72 (*supra*), for the alleged purpose of furthering the ambitions described in paragraph 69 (*supra*), would adversely affect Plaintiff, and that they were unlawful.

74. Accordingly, as a consequence of the alleged *pattern of racketeering activities* of the Defendants (and each of them), Plaintiff requests judgment for money *Damages* — *i.e.*, *specifically*, that the Court grant Plaintiff the recovery of money damages in the form of "actual" (*inclusive of* such basic income property proven to have been unlawfully

withheld, and the prescribed *substantive prejudgment interest thereon*) through December 31, 2013, compensatory, exemplary/punitive damages; and all other *remedial damage awards* as are permitted by law for the alleged injuries occasioned by the alleged pattern of racketeering activity described in paragraphs ?? through ?? (*supra*), encompassing the alleged violation of **18 U.S.C. § 1951** and **§ 1952** attendant to the alleged unlawful attempts by the Defendants (and each of them) to extort and/or provide for the unlawful withholding of Plaintiff's income property, in furtherance of their *alleged interest and participation* in the establishment of an enterprise sought to be and ultimately formed by the Defendants (and each of them) in violation of **18 U.S.C. § 1962** to Plaintiff's detriment.

75. Plaintiff further requests judgment for *Declaratory Relief — i.e.*, *specifically*, that the Court *declare* that (**a**) the regulatory provisions of **WAC 296-128-012(1)** to be applicable only to "Dedicated" drivers capable to returning to their SWIFT home terminals or assigned SWIFT dedicated customer operations or distribution terminals allowing for the driver to take at least *one full day of home time per week*; (**b**) the regulatory provisions of **WAC 296-128-012(2)** to be applicable OTR drivers, dispatched on one or more dispatch assignments per week whom while under the control and direction of Defendant SWIFT are prevented *in general*, and *more specifically* insofar as it is alleged Plaintiff "was prevented" from returning to his SWIFT home terminal for the purpose of allowing Plaintiff to take at least *one full day of home time per week*; and (**c**) Plaintiff, as an OTR driver, is/was entitled to *all emoluments* consistent with the criteria established in *Stevens v. Brink's Home Sec., Inc.*, 162 Wn.2d 42, 48-49, 169 P.3d 473, 2007 Wash. LEXIS 792 (Wash. 2007), *inter alia*, while deployed.

76. Plaintiff further requests judgment for *Injunctive Relief — i.e.*, *specifically*, that (**a**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be enjoined from continuing the alleged unlawful withholding of Plaintiff's liquidated income property, and any future performance of the acts alleged and

complained of herein that allows or permits the Defendants to profit directly and/or indirectly from *income received and/or derived directly or indirectly, from the alleged pattern of racketeering activity described in* paragraphs 69 through 73 of this Count of this Cause of Action (*supra*); (**b**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be enjoined from profiting from, and otherwise exercising and/or holding any interest in the financial dealing of *Knight-Swift* as a consequence of *the alleged pattern of racketeering activity described* in this Count of this Cause of Action leading to the establishment of *Knight-Swift* in violation of **18 U.S.C. § 1962(a)**; and (**c**) Defendant KNIGHT and Defendant SWIFT (*inclusive of* their respective executive, administrative or other professional managing and supervisory personnel associated in fact) be Ordered (following any recovery by Plaintiff of the damages asserted and sought by the terms of paragraph 64 [*supra*]), to (*i*) ascertain, recover, report and surrender to *Knight-Swift* all the profits said Defendants that have been accumulated, and/or have been achieved and/or received since the official incorporation of *Knight-Swift* (inclusive of all of its subsidiaries), (*ii*) divest ownership of all securities and other holdings the Defendants (and each of them) own in *Knight-Swift* , (*iii*) make a public disclosure of and to surrender all assets (both tangible [*i.e.*, buildings, currency, equipment, fixtures, furnishings land real property]; and/or intangible [*i.e.*, those that are otherwise electronically convertible]), and other holdings of *Knight-Swift* into receivership for the purpose of ascertaining their value in furtherance the dissolution of *Knight-Swift* , (**d**) and require the market value of the proceeds of such *sale to be equally distributed to all past and present commercial drivers* employed by the Defendants (and each of them), *Provided* Plaintiff *be excluded therefrom* if such driver distribution results in *an amount equal to or below any award for damages* obtained by Plaintiff as a consequence of the *pattern of racketeering activity* alleged herein, in accordance with the provisions of the first sentence of **18 U.S.C. § 1964(a)**.

## JURY DEMAND

1.  Plaintiff hereby demands trial by jury of his claims under this *Cause of Action* against the Defendants (and each of them).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for joint and several judgments against the Defendants (and each of them), as *provided in* paragraphs 48 through 50 of Count 1; paragraphs 65 through 67 of Count 2; and paragraphs 74 through 76 of Count 3, respectively.

Dated: July 15, 2019

TERRY LOUIS CARTER
P.O. Box 70047
Overport, Durban 4067
Kwazulu Natal Province
Republic of South Africa
Phone Number:  (575) 571-3486
Fax Number:     (888) 355-9313
Email: cruiser184@hotmail.com
*Plaintiff*
*In Propria Persona*

## VERIFICATION

## DECLARATION OF TERRY LOUIS CARTER

I, TERRY LOUIS CARTER, declare under penalty of perjury, under the law of the United States of America that I am the Plaintiff named in the foregoing "Complaint for Damages; and Declaratory and Injunctive Relief", file under the provisions of the "Racketeer Influenced and Corrupt Organizations Act" (**18 U.S.C. § 1961**, *et seq.*); and that I know the contents thereof, and that the facts alleged therein are true and correct of my own knowledge, except as to those matters stated upon information and belief, and as to them, I believe them to be true.

Executed on this **15**th day of **July 2019**, at Phoenix, Arizona.

Respectfully submitted,

TERRY LOUIS CARTER
*Plaintiff, In Pro Per*